## JAMES HALLOCK
*vs.*
## MOTORS, INC.

| Superior Court | New Haven County (At Waterbury) | File No. 13587 |

MEMORANDUM FILED MARCH 27, 1941.

*Thomas F. McGrath,* of Waterbury, for the Plaintiff.

*Bronson, Lewis, Bronson & Upson,* of Waterbury, for the Defendant.

McEVOY, J. The plaintiff was operating a motor truck out of a private driveway on to a public highway. The traveled portion of the highway consists of two cement panels, each of which is approximately ten feet in width. On the northerly side of the cement lane there is a tarred shoulder six feet in width. On the southerly side the tarred shoulder is nine feet wide. As the plaintiff approached the northerly lane of the public highway he brought the truck to a stop; looked to his right and left and then proceeded to his left at a speed of approximately five miles an hour. As he crossed the northerly cement lane of the highway he could see about 150 to 200 feet to his left—that is, easterly. A vehicle approaching from the plaintiff's left—that is, approaching in a westerly direction, from the east—would be so placed that its operator could, in the exercise of reasonable care, have seen the plaintiff's vehicle when it was about on the center line of the two cement lanes at a distance of 150 to 200 feet.

The operator of the defendant's vehicle did not see the plaintiff's vehicle until the operator of the defendant's vehicle was within about 65 feet of the plaintiff's vehicle.

As the defendant's operator drove westerly and about 400 or 500 feet easterly of a quarry which is in close proximity to and just easterly of the scene of the collision, he was driving at a speed of at least 65 miles an hour, followed at a distance of about ten feet by another vehicle which was proceeding at approximately the same speed.

This speed continued for a distance of 300 or 400 feet westerly toward the scene of the collision. At that point the road makes a rather sharp turn to the west, which would be to the right of the defendant's operator.

The plaintiff, as he drove on to the public highway, had no right of way.

The defendant's operator had the right of way over the plaintiff.

From his testimony it is apparent that the defendant's operator had driven over the highway in question on many occasions.

It seems reasonable to infer that, in his previous use of this highway and from his travel over it in both directions, the defendant's operator had reasonable opportunity to observe the relatively sharp curve in the road and to be reasonably aware of the reasonable care required in the operation of an automobile in the vicinity of the quarry and the curve.

When the operator of the defendant's vehicle was, at least, 150 feet easterly of the plaintiff's vehicle there was then ample opportunity for him to have then seasonably and reasonably seen the position of the plaintiff's truck and to have decreased the speed of the car which he was then operating.

There was also ample opportunity for him, in view of the width of the northerly shoulder of the road, in addition to the width of the cement lane over which he was traveling, to have reasonably reduced his speed and to have turned to his right and to have avoided colliding with the plaintiff's vehicle.

The evidence clearly shows that he did none of these things and that this failure constituted negligence on his part which proximately caused injury to the plaintiff and his truck.

The plaintiff was, at all of these times, in the exercise of reasonable care.

The repairs to the plaintiff's truck cost $267.80 and this cost was the reasonable value of the repairs. Of this amount the plaintiff will be required to pay $50, and no more, because the payment of the cost of the repairs, less $50, is the liability of the insurance company whose policy covered the plaintiff's car. The plaintiff claims that he is entitled to recover the total sum of $267.80 upon the principles laid down in *Johnson vs. Palomba Co.*, 114 Conn. 108, at page 114, citing *Hayes vs. Morris & Co.*, 98 id. 603, 607. In the cases just cited the discussion was about recovery for loss of earning capacity and consequent loss of earnings.

" '....earning power is not necessarily confined to, and to be measured absolutely by, the bare wages he was receiving at the time of the accident.' " *Hayes vs. Morris & Co.*, 98 Conn. 603, 607, quoting from *Miller vs. Rhode Island Co.*, R.I. 82 Atl. 787, 788. " 'If one receives wages or salary, the amount lost in this regard from the enforced inability to work is a proper element to be considered in assessing damages, but it is not strictly recoverable as wages or salary.' " *Hayes vs. Morris & Co., supra,* 606, quoting from *Mahoney vs. Boston Elevated Ry. Co.*, 221 Mass. 116, 117.

In the instant case the situation is quite different.

In the *Hayes vs. Morris & Co.* case and in the *Johnson vs. Palomba Co.* case the employers gratuitously and "from motives of humanity" continued to pay the usual compensation to the disabled employee. In this case the payment by the insurance company was not gratuitously made. From the meager evidence introduced, respecting this phase of the matter upon the trial, it appeared that the insurance company was bound, by contract and the payments of premiums, to pay for all of the repairs and to save the insured person from expense, with the exception of a 50-dollar deductible payment.

Under these circumstances it would seem that, in the absence of other evidence tending to prove the plaintiff's claim, the plaintiff is limited to a recovery for his actual loss, which is $50 and not $267.80.

The issues are found for the plaintiff upon the complaint and upon the cross complaint.

Judgment may be entered for the plaintiff to recover of the defendant the following items:

1. Repairs to truck.................... $ 50.00
2. Hospital bill....................... 11.00
3. Cost of hiring employee and value of goods destroyed................. 49.74
4. Loss of profits...:................. 60.00
5. Personal injury, pain and suffering.... 500.00

Total $670.74, and his costs.

Judgment may enter accordingly.